IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


THOMAS BUTCHER,             )
                                    )
          Plaintiff,       )
                                    )   Civil Action No. 2:14-cv-00353
v.                              )
                                    )   Judge Mark R. Hornak
GENERAL MOTORS COMPANY;   )
GENERAL MOTORS, LLC;        )
VAUXHALL, INC.,            )
          Defendants.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

THOMAS BUTCHER,         )
             )
          Plaintiff,   )
            )   Civil Action No. 2:14-cv-01652
v.             )
            )   Judge Mark R. Hornak
ALLSTATE INSURANCE CO.,   )
            )
         Defendant.   )


## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

      This case is the story of a general release. The Plaintiff, Thomas Butcher, would like it to be about more than that: He wants this action to be about an allegedly defective airbag in his Saturn Astra. But because he signed a broad release that released all claims arising out of the car accident which would be the basis of his product liability claim, Mr. Butcher is barred

from proceeding with this lawsuit. The claims raised in his related case against Allstate Insurance Company[1] are barred for similar reasons. Each action will be dismissed.

## I. BACKGROUND

On February 17, 2012, Mr. Butcher was in a car accident. The other driver was Sharon Byerly, who was insured by Allstate Insurance Company. Mr. Butcher was driving a Saturn Astra. Mr. Butcher alleges that the Astra's airbag malfunctioned—that it did not deploy, causing him significant injuries.

Mr. Butcher retained James Datillo as his lawyer, who agreed to represent him in his lawsuit against Mrs. Byerly. It later became clear that Mrs. Byerly's insurance policy with Allstate had a policy limit of $15,000 for bodily injury. Mr. Datillo stopped representing Mr. Butcher, who continued to negotiate with Allstate representatives. Eventually, Allstate agreed to pay $15,000 to Mr. Butcher in exchange for his signing a general Release of All Claims ("Release"). According to its terms, the Release "forever discharge[s] . . . any other person, firm or corporation . . . from any and all claims, demands, damages, costs, expenses, loss of services, actions and causes of action . . ." in connection with the February 17, 2012 accident. ECF No. 69-1, at 2. The Release Mr. Butcher signed also states that no representations induced Mr. Butcher to sign the Release:

> To procure payment of the said sum, I hereby declare that I am more than 18 years of age that no representations about the nature and extent of said injuries, disabilities or damages made by any physician, attorney or agent of any party hereby release[d], nor any representations regarding the nature and extent of legal liability or financial responsibility of any of the parties released have induced us to make this settlement.

*Id.*

On February 14, 2014, Mr. Butler filed this action in the Court of Common Pleas of Allegheny County. Defendants removed to this Court on March 18, 2014. Defendant Vauxhall,

---

[1] *Butcher v. Allstate Insurance Company*, Civil Action No. 2:14-cv-01652.

2

Inc. was voluntarily dismissed from the case on November 5, 2014. ECF No. 62. Thereafter, the Court granted Defendant General Motors Company's Motion to Dismiss for lack of personal jurisdiction without prejudice, *see* ECF Nos. 4, 37, and 66, for reasons stated on the record at the oral argument of February 24, 2015. That leaves two Defendants: General Motors LLC and Allstate Insurance Company. For the reasons that follow, Mr. Butcher's claims against each of these parties fail.

## II.    STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). In short, a motion to dismiss should be granted if a party does not allege facts which could, if established at trial, entitle him to relief. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)

Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

A district court may convert a motion to dismiss into a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d), which provides:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

The Third Circuit has explained that under Rule 12(d), "a district court properly converts a motion to dismiss into a motion for summary judgment if (1) the materials submitted go outside of the pleadings and are not excluded by the court and (2) the parties had adequate notice of the district court's intention to convert." *Brown v. U.S. Steel Corp.*, 462 F. App'x 152, 155 (3d Cir. 2011).[2]

## III. DISCUSSION

### A. General Motors LLC's Motion to Dismiss

Mr. Butcher faces a problem. The language of the Release he signed with Allstate is a general release. As a result, the release of claims is broad: "I do hereby release and forever discharge . . . any other person, firm or corporation . . . from any and all claims, demands, damages, costs, expenses, loss of services, actions and causes of action . . ." arising out of the February 17, 2012 accident. ECF No. 69-1, at 2. By its terms, it covers all Defendants and claims in 14-353, and no party has argued otherwise. *See Buttermore v. Aliquippa Hosp.*, 561 A.2d 733, 735 (Pa. 1989).

Mr. Butcher's efforts to manufacture ambiguity in that contract fail. It is not ambiguous. Ambiguity in a contract is defined as the presence of language that is "reasonably susceptible of different constructions and capable of being understood in more than one sense." *Murphy v. Duquesne Univ. Of The Holy Ghost*, 777 A.2d 418, 429–30 (Pa. 2001) (internal quotation marks omitted). Mr. Butcher points to the fifth paragraph of the Release agreement, which states:

> I further understand that such liability as I may or shall have incurred directly or indirectly, in connection with or for damages arising out of the accident to each person or organization, release and discharge of liability herein, and to any other person or

---

[2] At the oral argument on September 9, 2014, the Court authorized discovery on issues related to the circumstances of the Release. Based on that discovery, at argument on February 24, 2015, the Court asked whether any party objected to the Court's conversion of any Rule 12(b)(6) Motion into a Motion for Summary Judgment, and all parties stipulated on the record that they did not object to such conversion.

organization, is expressly reserved to each of them, such liability not being waived, agreed upon, discharged nor settled by the release.

ECF No. 69-1, at 2. Mr. Butcher argues that this is ambiguous. According to him, it could mean that he was not waiving his right to sue other parties. His confusion in reading this section, he says, demonstrates its ambiguity. Mr. Butcher's contention does not hold water. To the Court, which is charged with interpreting and analyzing any contract in the first instance, *Murphy*, 777 A.2d at 430; *Great American Insurance Co. v. Norwin School District*, 544 F.3d 229, 243 (3d Cir. 2008), there is only one way to read this paragraph, and that is as a statement that other parties are not releasing or discharging any claims they may have against Mr. Butcher. There is no ambiguity here.

The Release is also an integrated document in that the Release states in clear terms that "no representations . . . of any of the parties released have induced us to make this settlement." *Id.* As a result, the parol evidence rule applies. *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004). This means that evidence of prior representations is not admissible. *Id.* Mr. Butcher tries to get around this by claiming that the Release was the product of fraud, mutual mistake, or accident. ECF No. 74, at 10. *See Yocca*, 854 A.2d at 437 (explaining that an exception to the parol evidence rule exists "where a party avers that a term was omitted from the contract because of fraud, accident, or mistake"). None of these theories succeeds.

First, Mr. Butcher says that he is alleging fraud in the execution of the Release, but he is actually alleging fraudulent inducement. *See, e.g.*, ECF No. 74, at 16 (Plaintiff arguing that the "Allstate representative fraudulently misrepresented the protections and preservation of Plaintiff's product liability claims"). As the *Yocca* court explained:

> Notably, while parol evidence may be introduced based on a party's claim that there was a fraud in the execution of the contract, *i.e.*, that a term was fraudulently omitted from the contract, parol evidence may not be admitted based on a claim that there was fraud in the

inducement of the contract, *i.e.,* that an opposing party made false representations that induced the complaining party to agree to the contract.

*Yocca*, 854 A.2d at 439 n.26 (citing *HCB Contractors v. Liberty Place Hotel Assocs.*, 652 A.2d 1278, 1280 (Pa. 1995)). In the past, this Court has addressed claims of fraudulent inducement in the context of the parol evidence rule and concluded that the parol evidence rule has two requirements: "(1) that the written agreement contains terms which directly deal with the subject matter of the alleged oral representation; and (2) represents the entire contract between the parties, particularly where the written agreement also contains an integration clause." *Palermo Gelato, LLC v. Pino Gelato, Inc.*, No.12-931, 2013 WL 3147312, at *4 (W.D. Pa. June 19, 2013) (internal quotation marks omitted). Those two requirements are met here. Since the parol evidence rule applies, allegations of fraudulent inducement are barred. *See also Charlton v. Gallo*, No. 09-2447, 2010 WL 653155, at *4 (E.D. Pa. Feb. 19, 2010) ("Where a party claims fraud in the inducement and the written contract is fully integrated, the parol evidence rule works to bar evidence of any representations made about any matter covered by the agreement prior to the contract's execution.").

Second, Mr. Butcher says that if his fraud argument fails, then the Court should find that the Release is the product of mutual mistake or accident.[3] "Mutual mistake exists where both parties to a contract are mistaken as to the existing facts at the time of execution . . . ." *Holt v. Dep't of Public Welfare*, 678 A.2d 421, 423 (Pa. Commw. Ct. 1996). The mistake must be mutual. *Roth v. Old Guard Ins. Co.*, 850 A.2d 651, 653 (Pa. Super. 2004) (citations omitted) ("A unilateral mistake, which is not due to the fault of the party not mistaken, but to the negligence of the one who acted under the mistake, cannot be a basis for refusing to enforce the release according to its terms."). To make out mutual mistake, the party asserting it faces a high burden:

---

[3] Aside from using the term "accident" in the title of this portion of his brief, Mr. Butcher does not actually allege the presence of any accident as to the Release in this case, so the Court need not address that term.

"to obtain reformation of a contract because of mutual mistake, the moving party is required to show the existence of the mutual mistake by evidence that is clear, precise and convincing." *Holmes v. Lankenau Hosp.*, 627 A.2d 763, 767–68 (1993); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244 (1986) (holding that the "clear and convincing" standard must be considered on a motion for summary judgment). "As a general rule, parol evidence may also be introduced to demonstrate the existence of mutual mistake." *In re Leach*, No. 10-449, 2010 WL 3038794, at *4 (W.D. Pa. July 30, 2010).

Because the Court may treat General Motors LLC's Motion as one for summary judgment, the Court may view evidence outside of the pleadings in deciding whether mutual mistake exists here. The Court concludes that, under the heightened standard, Mr. Butcher has not presented clear, precise, and convincing evidence of mutual mistake. Rather, the evidence shows that, if a mistake was made at all, it was his unilateral mistake. Mr. Butcher has not submitted clear, precise, and convincing evidence that Virginia Fletcher, the Allstate representative who handled Mr. Butcher's claim with Allstate, intended to provide him with anything other than a general release. She gave the following deposition testimony:

> Q: Okay. Now, by sending that release, I believe you said earlier it was a general release and a release of all claims is what you called it at Allstate. Right?
>
> A: Yes.
>
> Q: Did you intend to release, as the release states, any other firm – I want to quote the release to make sure I'm stating it exactly right. Did you intend for the parties to discharge John and Sharon Byerly and any other person, firm or corporation charged or chargeable with responsibility or liability in connection with the accident?
>
> A: Yes, that was my intention.
>
> Q: Okay. And is it your understanding that General Motors would be included in the definition as stated there?

7

A: Yes, it would be.

ECF No. 69-4, at 20. Later in the deposition, Ms. Fletcher testified that nothing in the claim file history indicates that Mr. Butcher or anyone else ever mentioned the subject of a joint tortfeasor release. *Id.* at 23.[4] Had such a conversation taken place, Ms. Fletcher says it would have been included in the claim file history. *Id.* Moreover, Ms. Fletcher explained that joint tortfeasor releases are available on the computer program used at Allstate much in the way that general releases are available and that she has used them in other cases. *Id.* at 24.

While it is true that "[e]ven if one party to the contract denies the existence of a mistake, the other party may still show there was a mutual mistake," *In re Leach*, 2010 WL 3038794, at *3 (citing *Bollinger v. Cent. Pa. Quarry Stripping & Constr. Co.*, 229 A.2d 741, 742 (Pa. 1967)), Mr. Butcher has not presented the kind of clear, precise, and convincing evidence that would controvert the testimony of Ms. Fletcher. Mr. Butcher points to his own deposition testimony in which he claims that Ms. Fletcher told him that the fifth paragraph of the Release preserved his right to bring an additional product liability action against a party who might have been responsible for the alleged airbag malfunction. ECF No. 74-5, at 11–12. He also cites the deposition testimony of his wife, Sherry Butcher, who claims that Ms. Fletcher told her during a telephone conversation that the Release only released Allstate and would not bar a later product liability suit against another party by Mr. Butcher. ECF No. 74-6, at 3.

But the testimony of the Butchers does not establish mutual mistake because it does not demonstrate, by clear, precise, and convincing evidence, that Ms. Fletcher thought she was sending a joint tortfeasor release when she was really sending a general release. Importantly, on top of all that is Mr. Butcher's affirmation in the Release that he never relied on any

---

[4] Mr. Butcher makes some contentions about not having had access to the entire claims file, but the record reflects that it was made available to his lawyer, if they would stipulate that its provisions did not waive the attorney-client privilege. ECF No. 80-1. It does not appear that Mr. Butcher's lawyer ever responded.

representations of anyone about the Release when he signed it. Thus, he cannot now rely on just such a pre-execution representation by Ms. Fletcher to make out a "mutual" mistake. Thus, for all these reasons, this argument fails.

Finally, the deposition of James Datillo, Mr. Butcher's former lawyer, does not support a finding of mutual mistake. Instead, Mr. Datillo explains in his deposition that he told Mr. Butcher to have an attorney review the Release to make sure that it was a joint tortfeasor release. ECF No. 74-2, at 7. Despite this urging, Mr. Butcher confesses that, while he spoke to "about a half a dozen other attorneys," he never had even one of them review the Release. ECF No. 69-2, at 9. Mr. Butcher claims that, after doing his own independent internet research, but without consulting an attorney, he "was pretty well greased, and [] thought [he] knew enough to make a decision to sign it or not." *Id.* And sign it he did, and none of this constitutes clear, precise, and convincing evidence that Ms. Fletcher was mistaken about the content of the Release, which is what Mr. Butcher would need to show to prove mutual mistake.

Mr. Butcher has not met his burden to avoid the effect of the Release. Viewing the evidence in the light most favorable to the nonmoving party, Mr. Butcher simply has not demonstrated either an ambiguity in the Release, or a factual issue as to a mutual mistake by the clear, precise, and convincing evidence required by Pennsylvania law. The Motion to Dismiss of General Motors LLC is granted.

B.    **Allstate Insurance, Inc.'s Motion to Dismiss**

In the related case, Mr. Butcher brings three (3) claims against Allstate in his Amended Complaint: (1) negligence and gross negligence, (2) common law fraud, fraud in the inducement, and fraudulent misrepresentation, and (3) violations of the Pennsylvania Unfair Trade Practices

9

and Consumer Protection Law ("UTPCPL"). Allstate's Motion to Dismiss will be granted on all three (3) claims for the following reasons.

The negligence claim fails because Allstate did not owe a duty to Mr. Butcher. *See Gibbs v. Ernst*, 647 A.2d 882, 890 (1994) ("Any action in negligence is premised on the existence of a duty owed by one party to another."). Despite Mr. Butcher's attempt to manufacture a duty running from Allstate (Ms. Byerly's insurer, not his) to him, it is clear that "the duty to negotiate a settlement in good faith arises from the insurance policy and is owed to the insured, not to a third-party claimant." *Strutz v. State Farm Mut. Ins. Co.*, 609 A.2d 569, 571 (Pa. Super. Ct. 1992); *see also Johnson v. Beane*, 664 A.2d 96, 101 n.3 (Pa. 1995) (explaining that the insurer's "duty to act in good faith in the investigation, negotiation, and settlement of the claim runs only to [the insured]").

The fraud claims fail for similar reasons to those discussed earlier in this Opinion.[5] Mr. Butcher has premised his fraud claims on alleged misrepresentations made by Allstate through Ms. Fletcher. But the Release Mr. Butcher signed says that no representations induced the parties to enter into the agreement. ECF No. 69-1, at 2. *See Blumenstock v. Gibson*, 811 A.2d 1029, 1036 (Pa. Super. Ct. 2002) ("[A] party cannot justifiably rely upon prior oral representations yet sign a contract denying the existence of those representations."). This principle, and the parol evidence rule, bar the consideration of the alleged misrepresentations that Mr. Butcher necessarily relies on for his claims of fraud. *Palermo Gelato*, 2013 WL 3147312, at *4.

---

[5] The Court may consider the Release at the Motion to Dismiss stage because, even though "release" is an affirmative defense, "the law of this Circuit (the so-called 'Third Circuit Rule') permits an affirmative defense to be raised by a motion under Rule 12(b)(6) in certain circumstances." *PPG Indus., Inc. v. Generon IGS, Inc.*, 760 F. Supp. 2d 520, 525 (W.D. Pa. 2011).

Mr. Butcher's UTPCPL claims, 73 P.S. § 201-1 *et seq.*, fail because he is not in a class protected by that statute. As explained by the Third Circuit, the UTPCPL "contemplates as the protected class only those who purchase goods or services, not those who may receive a benefit from the purchase." *Gemini Physical Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.*, 40 F.3d 63, 65 (3d Cir. 1994) (holding that, although the plaintiff "may have been indirectly injured," the plaintiff was "not a purchaser or consumer of goods or services under the CPL and therefore has no private right of action under the statute"); *see also Branche v. Wells Fargo Mortgage Co.*, No. 11-468, 2013 WL 5954730, at *5 (M.D. Pa. Nov. 6, 2013) (holding that "Plaintiff lacks standing to sue under the UTPCPL, and Defendant is entitled to summary judgment" because the plaintiff did not purchase services from the defendant) (citing *Gemini*, 40 F.3d at 65). Quite simply, "[t]o recover under the CPL, the party must have made a 'purchase . . . primarily for personal, family or household purposes.'" *Directv, Inc. v. Carter*, No. 4-2657, 2005 WL 119577, at *2 (E.D. Pa. Jan. 20, 2005) (quoting *Balderston v. Medtronic Sofamor Danek, Inc.*, 285 F.3d 238, 240 (3d Cir.2002)). Mr. Butcher is not, by any stretch, the purchaser of any consumer goods or services from Allstate, and therefore, Mr. Butcher does not have standing to pursue a claim under the UTPCPL. Allstate's Motion to Dismiss must be granted.

## IV. CONCLUSION

Because the Court concludes that Mr. Butcher's claims against General Motors LLC are barred by the Release he signed, General Motors LLC's Motion to Dismiss (or, in the alternative, Motion for Summary Judgment) will be granted. Furthermore, because Mr. Butcher's claims against Allstate fail to state a claim upon which relief can be granted, Allstate's Motion to Dismiss will be granted.

An appropriate Order will be entered.

Mark R. Hornak
United States District Judge

Dated: February 27, 2015

cc:    All counsel of record